FILED
2014 Feb-20  AM 09:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES BROOKS, GEORGE BRYANT, MICHAEL CROOM, ANTHONY DEBARDALABON, JERMAINE HARDIN CLIFFORD HENDERSON, ANTHONY E. JACKSON, ROBERT KIRKLAND, ROBERT LUCKY, FLENARD MCALPINE, JR.,  KIM PRINGLE, DAVID RUSH, ANTHONY R. TAYLOR, PATRICK UNDERWOOD, SILAS WALKER, and RAYMOND WILLIAMS | ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **COMPLAINT** |
| **SOUTHLAND TUBE, INC.** | ) ) | |
| **Defendant.** | ) | |

## COMPLAINT

## I.  NATURE OF COMPLAINT

This action is brought by sixteen (16) current and former African-American employees of Southland Tube Incorporated (hereinafter "Defendant" or "Southland Tube") to address Southland Tube's demonstrable policy of race discrimination and retaliation. These sixteen individuals (hereinafter referred to collectively as "Plaintiffs") bring this action to redress Defendant's practice of allowing racial discrimination and retaliation to infect its' decisions regarding pay, training, and promotions.  The Plaintiffs would aver as follows:

Southland Tube has followed a general practice of discriminating against African-Americans with regards to pay, training, and promotion. Moreover, African-American employees who have protested racially discriminatory treatment have been subjected to intimidation and retaliation by Southland Tube officials. A by-product of these practices is that African-American employees are expressly and impliedly discouraged from seeking positions of higher pay and responsibility. Furthermore, Southland Tube's retaliatory treatment of dissenters has had a "chilling effect" on their willingness to exercise their right to oppose and report race discrimination in employment.

## II.   <u>JURISDICTION AND VENUE</u>

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(3), and (4), 2201 and 2202. This is a suit authorized and instituted pursuant to the Act of Congress known as "The Civil Rights Act of 1866," 42 U.S.C. § 1981.

2.     Venue is proper in the Northern District of Alabama under 28 U.S.C. § 1391(b) & (c) because Southland Tube is located here, the persons responsible for overseeing the human resources function are here, Southland Tube maintains personnel records here, and engages in or ratifies illegal conduct adversely affecting the Plaintiffs here. The Defendant's failure to promulgate effective equal employment policies originated in this district. The records relevant to whether this Defendant has

2

issued such policies are located in this district.

### III.    CONDITIONS PRECEDENT TO SUIT

3.    Plaintiffs are timely filing this action within the four-year statute of limitations applicable to racial discrimination and retaliation claims brought pursuant to 42 U.S.C. § 1981. *See,* 28 U.S.C. § 1658.

### IV.    PARTIES

### A.    Defendant

4.    Defendant Southland Tube is an individual subject to suit under 42 U.S.C. §1981.

### B.    Named Plaintiffs

5.    **Charles Brooks** is an African-American resident of the State of Alabama and a citizen of the United States. At all times material to this action, he has been employed with Southland Tube.

6.    **George Bryant** is an African-American resident of the State of Alabama and a citizen of the United States. He is a former employee of the Defendant.

7.    **Michael Croom** is an African-American resident of the State of Alabama and a citizen of the United States. At all times material to this action, he has been employed with Southland Tube.

8. **Anthony Debardalabon** is an African-American resident of the State of Alabama and a citizen of the United States.  He is a former employee of the Defendant.

9. **Jermaine Hardin** is an African-American resident of the State of Alabama and a citizen of the United States.  He is a former employee of the Defendant.

10. **Clifford Henderson** is an African-American resident of the State of Alabama and a citizen of the United States.  At all times material to this action, he has been employed with Southland Tube.

11. **Anthony E. Jackson** is an African-American resident of the State of Alabama and a citizen of the United States.  At all times material to this action, he has been employed with Southland Tube.

12. **Robert Kirkland** is an African-American resident of the State of Alabama and a citizen of the United States.  At all times material to this action, he has been employed with Southland Tube.

13. **Robert Lucky** is an African-American resident of the State of Alabama and a citizen of the United States.  At all times material to this action, he has been employed with Southland Tube.

14.    **Flenard McAlpine, Jr.** is an African-American resident of the State of Alabama and a citizen of the United States. At all times material to this action, he has been employed with Southland Tube.

15.    **Kim Pringle** is an African-American resident of the State of Alabama and a citizen of the United States. He is a former employee of the Defendant.

16.    **David Rush** is an African-American resident of the State of Alabama and a citizen of the United States. At all times material to this action, he has been employed with Southland Tube.

17.    **Anthony Taylor** is an African-American resident of the State of Alabama and a citizen of the United States. He is a former employee of the Defendant.

18.    **Patrick D. Underwood** is an African-American resident of the State of Alabama and a citizen of the United States. At all times material to this action, he has been employed with Southland Tube.

19.    **Silas Walker** is an African-American resident of the State of Alabama and a citizen of the United States. He is a former employee of the Defendant.

20.    **Raymond Williams** is an African-American resident of the State of Alabama and a citizen of the United States. At all times material to this action, he has been employed with Southland Tube.

5

## V.    STATEMENT OF FACTS

### A.    Plaintiffs Allegations

21.    **Plaintiff Charles Brooks** (hereinafter "Brooks") was discriminated against on the basis of his race with regards to pay,  promotions, training, and other terms and conditions of employment.

22.    Brooks began working for the Defendant on August 22, 2006.  Since that time he has observed that he is being paid less than white employees that perform the same or similar jobs.  Brooks has also observed that white employees are hired in at higher rates of pay than African-Americans.  Brooks has also had to train newly hired white employees who then were selected for  positions of higher pay and prestige.  The Defendant has also denied Brooks training he needs to promote into positions of higher pay and prestige.

23.    Up until 2012 or 2013, the Defendant did not post jobs for open competition, instead relying on a "tap on the shoulder" procedure for awarding promotions.  Therefore, Brooks and other African-American employees were never made aware of jobs that offered more opportunity and higher wages.

24.    These practices have adversely affected Brooks by denying him the opportunity to work in an integrated environment in which he and other African-American have equal opportunities to compete for positions of higher pay

and prestige; by not being considered for job classifications traditionally held by white employees at Southland Tube; by being denied pay and training regularly provided to white employees; and by being subjected to unequal terms and conditions of employment.

25.    **Plaintiff George Bryant (**hereinafter "Bryant") was the lead plaintiff in a putative race discrimination class action lawsuit which was filed against the Defendant on November 23, 2010 [***Bryant v. Southland Tube, Inc., 2:10-cv-03215-SLB].***  The district court denied class certification in this case.  Since the filing of that lawsuit, Bryant has been subjected to retaliation and unequal terms and conditions of employment.

26.    On July 2, 2013, Bryant filed a charge of discrimination with the Equal Employment Opportunity Commission alleging retaliation in employment for his prior activity opposing and reporting race discrimination in employment. Specifically, Bryant was subjected to increased scrutiny and heightened discipline. Employees who had not filed a charge of discrimination were not subjected to such treatment.

27.    On November 20, 2013, Bryant filed another charge of discrimination protesting being placed on final warning.  Bryant also expressed his belief that the Defendant was targeting him for termination.

7

28.     On February 19, 2014, Bryant was terminated allegedly for being disruptive.  Bryant was not disruptive as he had only asked questions regarding his job description.  Bur for Bryant's prior activities of reporting and opposing race discrimination in employment, Defendant would not have terminated him.

29.     **Plaintiff Michael Croom (**hereinafter "Croom") began working for the Defendant in 2006 as a Laborer.  Croom always performed his duties and responsibilities in a satisfactory manner.

30.     In August of 2012, Croom and several other employees, African-American and white, complained of their treatment by a supervisor named Eric Kennedy.  Mr. Kennedy is African-American.  Each of these employees was told that no retaliation would ensue from the complaints lodged against Mr. Kennedy.

31.     On October 12, 2012, Croom was terminated by Mr. Kennedy.  Since complaining about Mr. Kennedy, all of the African-American employees who did so have been terminated.  None of the white employees who complained about Mr. Kennedy have been terminated.

32.     The Defendant did not allow Mr. Kennedy to discipline or terminate similarly situated white employees who commit rules infractions.  Mr. Kennedy often commented that he had been hired by the Defendant to "straighten out" the African-American employees.

33.    **Plaintiff Anthony Debardalabon (**hereinafter "Debardalabon") began working for the Defendant in May 2008 as a Laborer.    Debardalabon always performed his duties and responsibilities in a satisfactory manner.

34.    On August 30, 2012, Debardalabon was terminated by Eric Kennedy for poor job performance.    Mr. Kennedy is African-American.    Debardalabon had not been a poor performer and no paper work reflected such.

35.    The Defendant did not allow Mr. Kennedy to discipline or terminate similarly situated white employees who commit rules infractions.    Mr. Kennedy often commented that he had been hired by the Defendant to "straighten out" the African-American employees.

36.    **Plaintiff Jermaine Hardin** (hereinafter "Hardin") was a lead plaintiff in a putative race discrimination class action lawsuit which was filed against the Defendant on November 23, 2010 **[*Bryant v. Southland Tube, Inc.,* 2:10-cv-03215-SLB].**    The district court denied class certification in this case.    Since the filing of that lawsuit, Hardin was subjected to retaliation and unequal terms and conditions of employment and eventually termination.

37.    Hardin is Crane Operator.    On June 12, 2013, Hardin was terminated allegedly for refusing to operate a crane in Mill 6.    Hardin never refused to operate the crane, but merely asked for safety training before beginning the assignment.

38.    Hardin was refused training to operate the crane in Mill 6 and on that basis raised safety as an issue.   In the two years prior to his termination, the Defendant had two employees killed in accidents involving the operation of cranes. Moreover, employees have been injured due to the improper operation of cranes.

39.     Hardin was denied training in Mill 6 and was terminated because of his prior reporting of and opposition to race discrimination in employment.

40.    **Plaintiff Clifford Henderson** (hereinafter "Henderson") has been employed with the Defendant for approximately 12 years and is currently a Crane Operator.

41.    Henderson has never received a pay increase whenever he assumes the responsibility for a new job.  White employees who take over new positions receive salary increases.

42.    Henderson has also been denied pay and promotions at the same rate as white employees.  Up until 2012 or 2013, the Defendant did not post promotional opportunities for open bidding nor does it have an objective transparent procedure for the award of raises.

43.    Henderson has never been considered for any promotions to any supervisory or management position.  Up until 2010 or 2011, the Defendant did not have any African-American front-line supervisors.

44.    **Plaintiff Anthony E. Jackson** (hereinafter "Jackson") was hired by the Defendant on September 10, 2007 as a Bander.  In or around 2007, Jackson became an Overhead Crane Operator.  On December 27, 2013, Jackson suffered an on the job injury from an accidental fall.  Jackson's accident required stitches to the head but no hospitalization and he was released to return to work that same day.

45.    When Jackson attempted to return to work at his next scheduled time [December 30, 2013] he was informed that he had been terminated.  White employees who have accidents at work are not terminated or subject to discipline.

46.    **Plaintiff Robert Kirkland** (hereinafter "Kirkland") has been employed by the Defendant since March 1999.  Since being employed with the Defendant, Kirkland has expressed interest in promotions and pay.  Kirkland is approximately 69 years old.

47.    Up until 2012 or 2013, the Defendant did not post promotional opportunities for open bidding nor does it have an objective transparent procedure for the award of raises.

48.    Kirkland has never been considered for any promotions to any supervisory or management position.  Up until 2010 or 2011, the Defendant did not have any African-American front-line supervisors.

49.    On May 28, 2013, Kirkland filed a charge of discrimination with the

11

Equal Employment Opportunity Commission. During the second week of June 2013, the owner of Southland Tube, Inc. and the human resources director, both white males, called Kirkland in for a meeting.

50.     During the aforementioned meeting, Defendant's officials questioned Kirkland about his charge, asked him why he was suing the company, and had the Defendant not treated him fairly.

51.     The human resources director then handed Kirkland the name, address, and telephone number of the EEOC investigator assigned to his charge. The human resources director then told Kirkland that if he wanted to drop his EEOC charge he could call the investigator. Defendant's officials attempted to strong arm Kirkland into rescinding his charge of discrimination. But for Kirkland's reporting and opposing race discrimination in employment, Defendant would not have acted in the aforementioned retaliatory manner.

52.     **Plaintiff Robert Lucky** (hereinafter "Lucky") has been employed with the Defendant for approximately 15 years. He currently works as a Coil Hauler and has occupied that position the majority of his time as an employee. Lucky has expressed a desire to promote into positions of higher pay and prestige, however, he has been denied that opportunity.

53.     Up until 2012 or 2013, the Defendant did not post promotional

12

opportunities for open bidding nor does it have an objective transparent procedure for the award of raises.

54.     Lucky has never been considered for any promotions to any supervisory or management position.  Up until 2010 or 2011, the Defendant did not have any African-American front-line supervisors.

55.     On June 3, 2013, Kirkland filed a charge of discrimination with the Equal Employment Opportunity Commission.  On July 2, 2013, Lucky received a three-day suspension for an alleged safety violation.  In the 15-plus years Lucky has worked for the Defendant he has never had an accident.

56.     But for his reporting and opposing race discrimination in employment, Lucky would not have received the three-day suspension.

57.     **Plaintiff Flenard McAlpine, Jr.** (hereinafter "McAlpine") has been employed by the Defendant since 2007.  Since 2012, Mcalpine has performed the job duties of two positions without receiving any more pay.  A white employee retired and McAlpine was given the duties of that individuals job.  McAlpine has requested pay raises but to no avail.  White employees regularly receive raises based on their performance in one job, let alone two.

58.     Up until 2012 or 2013, the Defendant did not post promotional opportunities for open bidding nor does it have an objective transparent procedure for

13

the award of raises.

59.    McAlpine has never been considered for any promotions to any supervisory or management position.  Up until 2010 or 2011, the Defendant did not have any African-American front-line supervisors.

60.    **Plaintiff Kim Pringle** (hereinafter "Pringle") began working for the Defendant in June 2006.  On May 31, 2013, Pringle was terminated for an incident that allegedly costs the Defendant $30.60.

61.    During Pringle's career he has personal knowledge of a white employee who was widely known to have misappropriated $20,000.00 to $30,000.00 of Defendant's material for his own use and/or sale yet remained employed.

62.    Numerous similarly situated white employees who violate the Defendant's policies and procedures are not terminated.

63.    Pringle was also denied pay raises, promotions, and training that whites regularly received.

64.    **Plaintiff David Rush** (hereinafter "Rush") was hired by the June 30, 2010.  Rush currently is employed as a Warehouse Craneman and has been in that position since hiring on.

65.    Rush has attempted to move up in the company but has been denied those opportunities which went to white employees.

66.    Up until 2012 or 2013, the Defendant did not post promotional opportunities for open bidding nor does it have an objective transparent procedure for the award of raises.

67.    Rush has never been considered for any promotions to any supervisory or management position.  Up until 2010 or 2011, the Defendant did not have any African-American front-line supervisors.

68.    Moreover, Rush is an experienced Millwright and has made this fact known to several of Defendant's decision-makers in order that he may move into the Maintenance department.  Rush has always been denied an opportunity to move into Millwright positions.  The Maintenance department is all white except for one employee.

69.    **Plaintiff Anthony R. Taylor** (hereinafter "Taylor") was hired by the Defendant on July 2010.  Since that time Taylor has performed his duties and responsibilities in a satisfactory manner.

70.    On February 13, 2013, Taylor was terminated by Eric Kennedy.  Mr. Kennedy, an African-American, terminated Taylor for allegedly not performing an assigned task.

71.    The Defendant does not allow Mr. Kennedy to discipline or terminate similarly situated white employees who commit rules infractions.  Mr. Kennedy often

15

commented that he had been hired by the Defendant to "straighten out" the African-American employees.

72.    **Plaintiff Patrick Underwood** (hereinafter "Underwood") is currently employed by the Defendant.  Underwood has over 15 years of experience in heavy industrial and plant work.  He has operated cranes, various machinery, forklifts, heavy equipment, and worked in logistics.

73.    Despite this wealth of experience, Underwood hired on with the Defendant making $12.50 per hour.  White employees with far less experience have hired on with Defendant making $2.00 to $4.00 more than Underwood.  Moreover, whites with similar experience as Underwood have been hired in as supervisors in training.  Underwood never received any such opportunity.

74.    On November 8, 2013, Underwood was disciplined allegedly for being away from his work area for an excessive amount of time.  Underwood disputed this accusation and asked for proof, however, the discipline stood.

75.    Upon information and belief, Underwood was disciplined for reporting and opposing discrimination in employment because he complains regularly of being treated less advantageously than white employees and he refuses to shun Plaintiff George Bryant while at work.  Underwood has suffered reprisals for talking with and standing with Bryant when the latter protested unequal treatment of himself and other

African-American employees.

76.     Furthermore, African-American temporary employees have shared with Underwood that they were instructed to avoid he and Bryant as management considered them to be troublemakers.

77.     **Plaintiff Silas Walker** (hereinafter "Walker") was employed by the Defendant from 2010 to February 13, 2013.   Beginning in 2012, Walker was approached by one of Defendant's officials and asked to gather information on the named Plaintiffs in the civil rights case **[*Bryant, et al. v. Southland Tube, Inc.***: 2:10-cv-03215-SLB.]** Specifically, Walker was asked to infiltrate the social circles of the Bryant plaintiffs still employed with the Defendant and inform the supervisor of their activities.

78.     When Walker refused to infiltrate and inform on the Bryant plaintiffs, he was terminated.   Walker was terminated for a one-time crane error and before that time he had only been written up on one other occasion.   Walker had never been asked to spy on white employees.

79.     But for Walker's refusal to participate in discriminatory and retaliatory acts against the Bryant plaintiffs, he would not have been terminated.   Walker was terminated in retaliation for opposing discrimination in employment.

80.   **Plaintiff Raymond Williams** (hereinafter "Williams") has been employed with the Defendant for approximately 11 years.  Since that time Williams has received annual raises, but does not recollect receiving a merit raise.

81.   Williams has also expressed a desire to receive promotions to better paying positions, however, the Defendant does not employ a transparent process for employees to compete for promotions or pay increases.

82.   With regard to promotions, the Defendant employs a "tap on the shoulder" procedure whereby it promotes most, if not all, white employees to position paying more money and with more prestige.

83.   Williams has never had the benefit of being "tapped on the shoulder."

## VI.   CLAIMS

### COUNT I

### RACIALLY DISPARATE TREATMENT
### IN VIOLATION OF 42 U.S.C. § 1981

84.   Plaintiffs re-allege and incorporate by reference the above paragraphs with the same force and affect as if fully set forth herein.

85.   The unlawful actions of Defendant, by and through its agents, alleged herein were substantially motivated by unlawful race discrimination.  Defendant, by and through its agents, engaged in the race discrimination complained of herein with

18

malice and reckless indifference to Plaintiffs' federally protected rights.

86.     As a result of Defendant's actions, Plaintiffs have suffered extreme harm including, but not limited to, loss compensation and other benefits and conditions of employment.  Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering and loss of enjoyment of life.

## COUNT II

## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

87.     Plaintiffs Bryant, Croom, Hardin, Kirkland, Lucky, Underwood, and Walker re-allege and incorporate by reference the above paragraphs with the same force and affect as if fully set forth herein.

88.     The Defendant retaliated against Plaintiffs Bryant, Croom, Hardin, Kirkland, Lucky, Underwood, and Walker because of their opposition to and/or reporting of race discrimination in violation of 42 U.S.C. § 1981.

89.      As a result of Defendant's actions, Plaintiffs Bryant, Croom, Hardin, Kirkland, Lucky, Underwood, and Walker have suffered extreme harm including, but not limited to, loss of compensation and other benefits and conditions of employment. Additionally, Plaintiffs have suffered injury including pain, humiliation, mental anguish and suffering and loss of enjoyment of life.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1. Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the discrimination and retaliation engaged in by the Defendant are violative of the rights of the Plaintiffs as secured by 42 U.S.C. Sections 1981;

2. Grant Plaintiffs a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate 42 U.S.C. Sections 1981;

3. Enter an Order requiring Defendant to make Plaintiffs whole by awarding Plaintiffs back-pay (plus interest), front-pay, reinstatement into the position Plaintiffs would have held if Defendant had not discriminated and/or retaliated against them because of their race, compensation for loss of wages and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages;

4. Plaintiffs further pray for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this ligation;

5. Plaintiffs have no plain, adequate, or complete remedy at law to redress

the wrongs alleged in this suit, and this action for injunctive, declaratory and other

relief are their only means of securing adequate relief;

6.    Prejudgment interest; and

7.    Such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

/s/Roderick T. Cooks
Lee Winston
Roderick T. Cooks
Courtney L. Calhoun
Attorneys for the Plaintiffs

**OF COUNSEL:**
WINSTON COOKS, LLC
Two-20th Street North
Suite 1330
Birmingham, AL 35203
(205) 502-0970  telephone
(205) 278-5876 facsimile
email: rcooks@winstoncooks.com

**PLAINTIFFS' ADDRESS**:
WINSTON COOKS, LLC
Two-20th Street North
Suite 1330
Birmingham, AL 35203
(205) 502-0970  telephone
(205) 278-5876 facsimile
email: rcooks@winstoncooks.com

**DEFENDANT'S ADDRESS**:
SOUTHLAND TUBE INC
3525 RICHARD ARRINGTON JR BLVD
BIRMINGHAM, AL 35234-2307

**REGISTERED AGENT**
Craig Hill
3525 10TH AVE N
BIRMINGHAM, AL 35234-2307